IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DANIELLE SCHWARTZ and HAUNAH VANLANINGHAM, Individually and On Behalf of All Other Similarly-Situated Current Citizens of Illinois,<br><br>Plaintiffs,<br><br>vs.<br><br>CAMPBELL SOUP CO.,<br><br>Defendant. | Case No. 18-CV-1655-NJR-DGW |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on a Motion to Remand filed by Plaintiffs Danielle Schwartz and Haunah Vanlaningham (Doc. 21). For the reasons set forth below, the motion is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this putative class action on June 21, 2018, in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois (Doc. 1, Ex. 1). Plaintiffs allege Campbell Soup Co. ("Campbell") was unjustly enriched and violated the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, by deceptively and falsely representing that its soups were not made with preservatives (*Id.*).

Plaintiffs define the class as:

All current citizens of Illinois who purchased Campbell Soup "Slow Kettle Style" Tomato & Sweet Basil Bisque, Roasted Red Pepper & Smoked Gouda Bisque, New England Clam Chowder, "Home Style" Harvest Tomato with

> Basil, Zesty Tomato, and/or "Home Style Healthy Request" Harvest Tomato with Basil soups in the five years preceding the filing of the Petition in this case
> . . .

(*Id.*). Plaintiffs allege there are hundreds of members of the class, and the total value of their individual claims are, at most, equal to the refund of the purchase price of the soup (*Id.*). Plaintiff Schwartz contends she paid $3.89 for one of Campbell's soups, which is typical of all class members (*Id.*). Plaintiff Vanlaningham asserts she paid $2.49 for soup, which is also typical of all class members (*Id.*). Plaintiffs seek compensatory damages or, alternatively, disgorgement or restitution; pre- and post- judgment interest; attorneys' fees and costs; and all such other and further relief (*Id.*).

On August 29, 2018, Campbell filed a notice of removal in this Court, invoking the Court's jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), (Doc. 1). Plaintiffs move to remand the case, asserting the amount in controversy does not exceed $5,000,000, as required under CAFA (Doc. 21).

## DISCUSSION

CAFA grants Federal courts original jurisdiction over putative class actions where (1) the number of members of the plaintiff class is 100 or more; (2) any member of the plaintiff class is a citizen of a state different from that of any defendant; and (3) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs. 28 U.S.C. §§ 1332(d)(1)(B), (d)(2)(A), (d)(5)(B), (d)(6), (d)(8). When an action is removed from state court, the removing party bears the burden of establishing that all these requirements are met. *Spivey v. Vertrue, Inc.*, 528 F.3d 982 (7th Cir. 2008). "If the party opposing federal jurisdiction contests the amount in controversy, the proponent must prove those jurisdictional facts by a

preponderance of the evidence." *Blomberg v. Service Corp. Intern.*, 639 F.3d 761, 763 (7th Cir. 2011) (internal quotations and citations omitted).

The parties do not dispute that CAFA's minimal diversity and class member requirements are met. Plaintiffs allege the class "consists of hundreds of purchasers" (Doc. 1, Ex. 1). Additionally, Plaintiffs are Illinois citizens and the class members are "current citizens of Illinois," while Campbell is incorporated in New Jersey and has its principal place of business in New Jersey. *Dalton v. Teva North America*, 891 F.3d 687, 690 (7th Cir. 2018) (The citizenship of a corporation is its principal place of business and its state of incorporation.). Thus, the only remaining issue is whether Plaintiffs stand to recover more than $5,000,000.00.

Here, Campbell attached to its Notice of Removal a sworn declaration from its senior financial analyst, Kyle Hammonds, who estimates Campbell's soup sales in Illinois during the class period exceeded $5,500,000.00 (Doc. 1, Ex. 2). Mr. Hammonds explains that Campbell sells soups to grocery stores, distributors, and other third parties, but not directly to consumers (*Id.*). "As a result, Campbell does not possess sales information for the soups at the retail level" (*Id.*). However, Mr. Hammonds states that Campbell maintains financial information of its sales to Illinois retailers and allocates purchases to a state if it ships the product to an address in that state (*Id.*). According to Mr. Hammonds, "Although some Illinois retailers may sell the Soups to non-Illinois consumers, this practice will likely produce small and offsetting effects on state-specific sales numbers" (*Id.*). Mr. Hammonds further explains, "The total sales figure reflected by this data is less than the total retail sales number because retailers sell the Soups to consumers at a markup" (*Id.*).

Plaintiffs argue Campbell has not produced any "competent" evidence of the amount in controversy. They contest the accuracy of Mr. Hammonds's estimate because it derives

from sales to retailers, not consumers. Plaintiffs point out that Illinois retailers may have ultimately sold Campbell's soup to non-residents, which would inflate the damages estimate. Plaintiffs also argue Mr. Hammonds used an improper damages model because he only considered what retailers, and not consumers, paid. Plaintiffs maintain Campbell fails to offer any proof of the accurate measure of damages, which is the difference in value of the soups as represented and as sold.

Despite these arguments, Campbell has sufficiently proven that the potential damages in this case meet CAFA's amount-in-controversy requirement. As an initial matter, Plaintiffs are incorrect to the extent they argue Mr. Hammonds's declaration is not competent evidence. Proponents of federal jurisdiction may establish the amount in controversy "by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands. . . ." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006). Moreover, the extrapolation from wholesales into retail sales by Mr. Hammonds is a plausible method of calculating damages. *See Warma v. NBTW, Inc.*, 2009 WL 3230023, at *2-3 (S.D. Ill. Oct. 2, 2009) (also permitting the use of wholesale numbers). While it is likely that some Illinois retailers sold to non-Illinois residents, it is more likely that an overwhelming number of sales involved Illinois consumers. *See De Falco v. Vibram USA, Inc.*, 2013 WL 1122825, at *5 (N.D. Ill. Mar. 18, 2013). And, as Mr. Hammonds declares, Campbell's sales to out-of-state consumers "will likely produce small and offsetting effects on state-specific sales numbers" (Doc. 1, Ex. 2).

Plaintiffs' argument regarding the damages model offered by Mr. Hammonds is also unavailing. Plaintiffs assert Campbell did not present a calculation of damages reflecting "the difference between what the Soups were worth as represented and what the Soups were

worth as sold *to Illinois consumers*" (Doc. 21) (emphasis in original). But Plaintiffs, themselves, state in their Complaint, "Plaintiffs believe and allege that the total value of her [sic] individual claims is, at most, equal to the refund of the purchase price she [sic] paid for the Soups" (Doc. 1, Ex. 1).

Plaintiffs also bring claims under the ICFA, which permits the recovery of punitive damages. *See* 815 ILCS 505/10a; *Dubey v. Pub. Storage, Inc.*, 395 Ill. App. 3d 342, 356, 918 N.E.2d 265, 279 (2009). "Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining the jurisdictional amount." *Cadek v. Great Lakes Dragaway, Inc.*, 58 F.3d 1209, 1211 (7th Cir. 1995). "If punitive damages are available, subject matter jurisdiction exists unless it is legally certain that the plaintiff will be unable to recover the requisite jurisdictional amount." *LM Ins. Corp. v. Spaulding Enterprises Inc.*, 533 F.3d 542 (7th Cir. 2008). Here, Plaintiffs' complaint does not expressly seek punitive damages, but their prayer for relief includes "all such other and further relief, as may be just and proper" (Doc. 1, Ex. 1). Thus, it is still appropriate for the Court to consider potential punitive damages as part of the amount in controversy analysis. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006) (accounting for punitive damages "although the complaint was silent about punitive damages, [because] the ICFA permits recovery of punitive damages . . .").

Considering the above, it is not "legally certain" that Plaintiffs will be unable to recover the jurisdictional amount set forth in CAFA. Campbell introduced Mr. Hammonds's declaration evidencing its position, while Plaintiffs do not present any countervailing evidence of the amount in controversy. *See Oshana*, 472 F.3d at 506 (where the plaintiff provides little information about the value of its claim, "a good-faith estimate of the stakes is

acceptable if it is plausible and supported by a preponderance of the evidence."). Campbell has shown that it is more likely than not that the amount in controversy is satisfied.

Finally, Plaintiffs assert, "Because Defendant has included in its damages estimate the sales figures for Soups that Plaintiffs did not purchase, Defendant should be estopped from arguing at the motion to dismiss phase that Plaintiffs do not have standing to sue with respect to those Products" (Doc. 21). Plaintiffs do not cite any authority for this proposition. And despite Plaintiffs' contention, a defendant does not concede that a plaintiff has alleged cognizable damages by removing a case. *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 691 (S.D. Ohio Sept. 27, 2006).

## Conclusion

In sum, Campbell has met its burden regarding proof of the jurisdictional amount in controversy. For now, the Court's subject matter jurisdiction is satisfied. Accordingly, Plaintiffs' Motion to Remand (Doc. 21) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: January 8, 2019**

                                       **NANCY J. ROSENSTENGEL**
                                       **United States District Judge**